## CITY OF CAPE CANAVERAL v. COPLEY, et al.

No. 48096.

Circuit Court, Brevard County, Criminal Appeal.

March 20, 1970.

John Minot of Shepard, Shepard & Minot, Cocoa, for the appellants.

Stanley Wolfman, Merritt Island, for the appellee.

## VOLIE A. WILLIAMS, Jr., Circuit Judge.

*Opinion:* This is an appeal from the municipal court, city of Cape Canaveral. Appellant, Jay Walter Copley, was charged and convicted with the violation of ordinance 9-66, section 2, with the possession and intent to sell magazines entitled *Continental Naturist,* issue no. 20 and *Weekend Jaybird,* issue no. 13. The other appellant, Voshel Lewis Haworth, was also charged and convicted with violation of ordinance 9-66, section 2, with the possession and intent to sell the magazine *Continental Naturist,* issue no. 20, and further with willfully and knowingly selling the magazine *Weekend Jaybird,* issue no. 13. Ordinance 9-66, section 2 is set forth below —

> It shall be unlawful for any person to wilfully or knowingly sell, lend, give, show, advertise for sale or distribute commercially to any person, or who has in his possession with intent to sell, lend, give, show, advertise for sale or distribute commercially to any person any pornographic motion picture, or any still picture or photograph, or any book, magazine, paper, drawing or newspaper the cover or contents of which exploits, openly suggests, or is partly or wholly devoted to illicit sex or sexual immorality or which is obscene, lewd, lascivious, filthy, indecent, disgusting, or which consists of pictures of nude or partially denuded figures, posed or presented in a manner to provoke or arouse lust or passion so as to exploit sex, lust or perversion.

There is no dispute that on or about October 18, 1968 Sergeant James Cannon, employed by the police department of the appellee, entered the "convenience store" wherein the appellant Haworth was working as an employee and where the appellant Copley was the manager. Copley was not present in the store at the time of the seizure of various magazines, including *Continental Naturist,* issue no. 20, but was subsequently telephoned and requested to appear at the store. No search warrant was issued authorizing the seizure of any magazines. No prior judicial determination was made that the two magazines involved in this appeal were obscene. Sergeant Cannon was the sole judge in determining the objectionability of the magazine. He not only seized the magazine in question but also approximately 52 other magazines were seized in an indiscriminate manner. The criteria used by Sergeant Cannon and as testified by him was —

> "Upon looking through the magazine, the pictures, the poses, the suggestiveness of it, to me it's filth; it is lewd and it is obscene."

The magazine *Weekend Jaybird* was seized from a private citizen, 25 years of age, who had moments before the arrival at the store of Sergeant Cannon purchased said magazine.

One of the controlling questions in this case is the constitutionality of methods adopted which were calculated to and did suppress a form of expression. Obscenity, of course, is not constitutionally protected expression, but "the Fourteenth Amendment requires that regulation by the State [here, a municipality] conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, 372 U.S. 58.

In Marcus v. Search Warrants of Property, 367 U.S. 717, Missouri procedures permitted the issuance of a search warrant on the filing of a sworn complaint with a judge or magistrate. If the complaint stated "positively and not upon information or belief," or stated "evidential facts from which such judge or magistrate determines the existence of probable cause" to believe that obscene material "is being held or kept in any place or in any building, such judge or magistrate shall issue a search warrant directed to any peace officer commanding him to search the place therein described and to seize and bring before such judge or magistrate the personal property therein described." The owner of the property was not afforded a hearing before the warrant issued; the proceeding was ex parte. The court said, at pages 731-732 —

> We believe that Missouri's procedures as applied in this case lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled. Putting to one side the fact that no opportunity was afforded the appellants to elicit and contest the reasons for the officer's belief, or otherwise to argue against the propriety of the seizure to the issuing judge, still the warrants issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene . . .

Later, in a Quantity of Copies of Books v. Kansas, 378 U.S. 205, a Kansas statute authorized the seizure of allegedly obscene books before an adversary determination of their obscenity. The state attorney general went further than the statute required and filed an information identifying by title 59 novels, and submitted six of these, together with a seventh novel, with the information. Again, although not required by statute, the district judge conducted a 45 minute ex parte inquiry during which he "scrutinized" the books, determined that they appeared to be obscene and issued the warrant. The court said, at pages 210-211 —

> It is our view that since the warrant here authorized the sheriff to seize all copies of the specified titles, and since P-K was not afforded a hearing on the question of the obscenity even of the seven novels before the warrant issued, the procedure was likewise constitutionally deficient. * * *

> We therefore conclude that in not first affording P-K an adversary hearing, the procedure leading to the seizure order was constitutionally deficient. * * *

The procedure here was simply seizure without a warrant. Nothing was submitted for the examination of a judicial officer. There was no judicial hearing as to the obscenity *vel non* of the material. Appellants had no opportunity to be heard or to inquire into the basis of a determination of obscenity. The seizure occurred *solely* on the determination of a police officer that the material was obscene, "without regard to the possible consequences for constitutionally protected speech." Marcus v. Search Warrants, supra. Approximately 52 magazines were seized at the store, many of them undoubtedly not obscene since only one was used in the prosecution of the appellants. I have no doubt that the police procedures adopted here fall far short of constitutional demands. If a court decides that the material is of such pornographic nature that First Amendment guarantees do not protect it, the police may seize it. But the appellants are entitled to have a court, not a policeman, pass on that question, with opportunity for each side to be heard. Anything less than that is, not a denial of freedom of speech, but a denial of due process of law. For a list of cases supporting this view see those cited in City News Center, Inc. v. Carson, ———F. Supp. ———, no. 69-268-Civ-J (M.D. Fla., filed February 25, 1970).

It is, therefore, the opinion of this court that because a prior adversary hearing was not held the materials seized or purchased should be returned and suppressed from use in pending or future prosecutions arising from the seizure on October 18, 1968 and as a result the convictions here under review are reversed.

Since trial court judges are not as insulated from popular public sentiment nearly so well as are our brethren at the appellate level, it might not be inappropriate to attempt to explain in language a layman can understand, the reasons lying behind most appellate decisions relating to pornography.

Thomas Jefferson, when he was first inaugurated president of this country, said in his inaugural address, "While the will of the majority is in all cases to prevail, that will, to be rightful, must be reasonable."

Is it reasonable to expect owners or operators of bookstores, drug stores, supermarkets, and convenience stores to examine every book or magazine delivered to them by either the publisher or distributor?

Is it reasonable to expect them, even if each book and magazine were examined, to make a unilateral determination, at their own

peril, as to which books and magazines were not pornographic? The laws of this country have not been based on the theory of Russian Roulette.

We prohibit murder, but everyone knows what murder is. We restrict the speed of motor vehicles, but everyone knows what 15, 45, 60 and 70 M.P.H. is. But what might be pornography to one person might not be at all pornographic to another. This is why it is essential there be a prior judicial determination that a publication is, in fact, hard-core pornography. Unlike Russia, our courts have been and should be a shield for the citizen and not armor against him. Without such a hearing, it is inherently unfair to subject a person to criminal prosecution, embarrassment and public scorn on so elusive a subject and so subjective a determination. After such a determination, if the person persists in selling such offensive material he would then do so at his own peril.

Pornography is difficult to define. Mr. Justice Potter Stewart of the Supreme Court of the United States, and scarcely a man who could be denominated a "screaming liberal", in the *Roth* case, made the observation that while he could not define pornography "I know it when I see it." Personally, I am not at all satisfied there could ever be general concensus as to what actually constitutes pornography. It, like beauty, lies in the eye of the beholder. However, if answers to these burdensome questions are to be resolved on the basis of extremist public sentiment, there is no use in having law. We will have plunged ourselves into a state of anarchy.